Butler v. The State.

---

## BUTLER *vs.* THE STATE.

1. A demurrer to an indictment for forgery, on account of a variance between the instrument described therein and that offered in evidence at the trial, cannot be considered by the court, unless oyer of the instrument is craved.

2. A writing in these words, viz: "By the 25th day of December next I promise date to pay to Wm. H. Butler, or bearer, the sum of one hundred and interest from and two dollars for value rec'd of him, this February 23d, 1850." (signed) "Stephens Burns," is a promissory note within the forty-third section of the fourth chapter of the Penal Code, (Clay's Digest 423, § 43) and will sustain an indictment for forgery.

3. The statute of this State (Clay's Digest 442, § 26) dispenses with the neces-

sity for using the word ,' feloniously" in all indictments for crimes which were misdemeanors at common law, but are made felonies by our Penal Code.

4. Under an indictment for forgery, it is not necessary that there should be a literal correspondence between the instrument described in the indictment and that offered in evidence at the trial; if the correspondence is such as will prevent the prisoner from being a second time put in jeopardy for the same cause, should he be acquitted, or from being a second time punished, should he be convicted, it is sufficient.

5. Where there is a patent ambiguity on the face of the note charged to have been forged, arising from the use of words which are awkwardly, unskilfully or designedly inserted, it is the duty of the court to examine it, and to instruct the jury how it should be read.

6. Parol proof as to the manner in which the prisoner read the note to the witness, to whom he offered it, is admissible to show the *quo animo* with which it was made and uttered.

7. When one of the original papers in a cause belonging to the files of the primary court is, by an order of that court, attached to the transcript sent to the Appellate Court, the latter cannot inspect or examine it for any purpose whatever.

ERROR to the Circuit Court of Jefferson.

Tried before the Hon. GEO. D. SHORTRIDGE.

The plaintiff in error, Wm. H. Butler, was indicted for forgery. The indictment contained seven counts, to each and all of which the prisoner demurred. The court sustained the demurrer to the fourth and seventh counts, and overruled it as to the others.

On the trial, as appears by the bill of exceptions, the State offered in evidence to the jury the following instrument in writing, viz: "By the twenty-fifth day of December next I promise date to pay Wm. H. Butler, or bearer, the sum of one hundred and interest from and two dollars, for value rec'd of him, this February 23, 1850," (signed) "Stephen Burns;" and then offered a witness to prove that the prisoner had offered to sell him the same for a horse; that witness agreed to sell the horse for seventy-five dollars, and to pay him the balance; that at this time witness was on his way home to Gadsden, with a wagon and team; that the horse he was to sell was one of said team; that when he looked at the note, he had some doubts about it, not liking the way in which it was written, and required some explanation as to the manner in which it should be read; that the prisoner, after explaining to him why it was thus written, read it to him as follows:

" By the twenty-fifth day of December next I promise to pay Wm. H. Butler, or bearer, the sum of one hundred and two dollars, for value rec'd of him, this February 23, 1850, and interest from date."

The prisoner, by his counsel, objected to the evidence of said witness, as to the manner in which the prisoner said the note should be read; but the court overruled his objection, and he excepted. The witness then further stated, that the prisoner consented that he should take the note, and make inquiries about it; and if he was satisfied that Mr. Burns was as good as he thought him, the trade was to be perfected when he returned, and he was then to deliver the horse, and pay the balance in money; that he was gone five days, and some days after he returned the prisoner sent for the note, and witness gave it up.

After the evidence was closed, the prisoner's counsel moved the court to exclude said writing from the jury, under the second count, because of the variance between said writing and the note described in said count; which motion the court overruled, and the prisoner excepted. The prisoner's counsel also moved the court to exclude said writing from the jury under each count separately, because of the variance between it and the instrument described in each count; which motion the court overruled, and permitted said paper to go to the jury under each one of said counts, and the prisoner excepted.

The errors assigned are:

1. The overruling of plaintiff's demurrer to the first, second, third, fifth and sixth counts respectively;

· 2. The several decisions against the plaintiff shown by the bill of exceptions.

E. W. PECK, for plaintiff in error:

1. The prisoner's demurrer to the first, third, fifth and sixth counts should have been sustained, because the paper described in them is not a promissory note. Story on Promissory Notes, §§ 1, 13, 20.

2. The first and sixth counts are bad, because the alleged offence is not charged to have been done feloniously. The State v. Beasley, 18 Ala. 535; Archbold's Crim. Pl. 338, 46.

3. The parol evidence admitted by the court, to show how

the paper offered to the jury should be read, ought to have been excluded. 2 U. S. Digest 294, and cases there referred to.

4. The paper offered in evidence should have been excluded, because of the variance between it and the instrument described in the several counts of the indictment.

M. A. BALDWIN, Attorney General, *contra.*

LIGON, J.—The first, second, third and fifth counts of this indictment are evidently framed in reference to the forty-third section of the fourth chapter of our Penal Code, (Clay's Digest 423, § 43,) which declares, that "every person who shall falsely make, alter, forge, or counterfeit, any bond, bill single, promissory note, bill of exchange, or the acceptance of any bill of exchange, or the indorsement of any bond, bill single, promissory note, or bill of exchange, or any cotton receipt, or receipt for the payment of money, or any other thing, shall, on conviction, be deemed guilty of forgery in the second degree." The sixth count is framed under the forty-ninth section of the same chapter, (Clay's Dig. 424, § 49) which declares the uttering of a forged note a crime of the same grade as the forgery itself. These counts are severally demurred to; first, for a variance between the instrument described in them respectively, and the one produced on the trial; and secondly, because the instrument set out in each of them is not a promissory note.

The first ground of demurrer, that for a variance, does not arise on the demurrer found in the record, since it does not appear that oyer was craved of the instrument, and without this the court cannot look to it to see whether there be a variance or not.

The objection taken, that the paper set out in the several counts in the indictment is not a promissory note, ought not, we think, to prevail. It is true, the instrument as it is set out in each count, except the second, so far as the arrangement and order of its words are concerned, is not in the form ordinarily used in drawing a promissory note; yet, when examined, it will be found to contain all that is necessary for that purpose. Neither form of it could be read, without im-

pressing the mind, at once, with the idea that it was a good promissory note for one hundred and two dollars, payable on the 25th of December next after its date. The words which are awkwardly, unskilfully or designedly blended with such as are necessary to make a promissory note for this sum, are not of such an import, nor are they so placed, as to weaken or destroy the force of the operative ones. They may be altogether stricken out, and still the instrument would remain a promissory note; or they may remain without affecting its character as such.

It is unnecessary to transcribe in this opinion the various forms of the writing charged to be forged, as it appears in the first, third, fifth and sixth counts of the indictment. One form of it, and that, perhaps, the most objectionable, must suffice. I copy from the fifth count: "By the twenty-fifth day of December next I promise date to pay to Wm. H. Butler, or bearer, the sum of one hundred and interest from and two dollars for value rec'd of him, this February 23, 1850, Stephen Burns."

It may well be asked, what possible influence can the words "date and interest from," in the connection and order in which they occur here, exercise over the remaining words of the instrument, either to change, enlarge, or restrict their meaning? We can see none: and are constrained to hold, that the instrument set out in the first, third, fifth and sixth counts of the indictment is a promissory note, within the meaning of the sections of our Penal Code heretofore quoted.

This objection cannot apply to the second count, as that sets out the instrument as a promissory note for the sum of $102, with interest from date.

It is further objected to the first and sixth counts, that the forgery is not charged to have been done feloniously. It is true, that the author to which we are referred says: "In forgery the word "feloniously" must be used, if made felony by the statute." Archbold's Crim. Pl. 46. This, doubtless, is the law in England, and an indictment would be bad on demurrer which did not charge the forgery to have been done feloniously. But this court has already held, in Beasly v. The State 18 Ala. 535, that the true interpretation of our statute (Clay's Dig. 442, § 26) is, to dispense with the use of

the word "feloniously" in all indictments for crimes which were misdemeanors at common law, but are made felony by our Penal Code. Forgery by the common law was deemed a misdemeanor. 1 Russ. on Crimes 32; 2 ib. 317. But by statute, both in this State and in England, it has been made felony. In an indictment, therefore, for forgery in this State, it is not indispensable that it should be charged to have been done feloniously.

On the trial the following note was offered as evidence under each count in the indictment: "By the twenty-fifth day of December next I promise date to pay Wm. H. Butler, or bearer, the sum of one hundred and interest from and two dollars for value rec'd of him, this February 23, 1850, Stephen Burns," which was objected to by the prisoner; but his objection was overruled, and he excepted.

Under the first, third, fifth and sixth counts of this indictment it is perfectly clear, the note offered was properly received in evidence. To render it admissible, it is not necessary that there should be a literal correspondence between it and the paper set out in the counts under which it is offered. If the correspondence be such as to prevent the prisoner from being put a second time in jeopardy for the same cause, should he be acquitted, or from being a second time punished, if he is convicted, it will be sufficient. The note here offered, in the arrangement and order of its words, is almost an exact counterpart of the one set out in the several counts just enumerated, and was rightly allowed to go to the jury under them. The variance is merely literal, and consequently is not enough to exclude it.

The second count in the indictment sets out the forged instrument as a promissory note for the payment of one hundred "and two dollars, and interest from date," and it is not quite so clear that the paper offered in evidence, as it is set out in the bill of exceptions, does not vary from the one set out in that count. The note, set out in the bill of exceptions, contains the words "and interest from date," but they are differently placed from what they are in the second count of the indictment. From their collocation in the note, that instrument is rendered somewhat ambiguous; but the ambiguity is patent, and it was fully in the province of the judge in the

court below to examine it, and declare how it should read. The original note was before him; we have nothing but the transcript, and this does not pretend to furnish even a *fac simile* of the note. Under these circumstances, we cannot say the court erred in its construction of the instrument, or in allowing it to go to the jury under the second count in the indictment. The party complaining of error must show it, and until this is done, all intendments will be indulged in favor of the regularity and correctness of the proceedings of the court below, if, as in this instance, it be one of general jurisdiction.

The testimony in relation to the manner in which the prisoner read the note to the witness, when the latter hesitated about receiving it in consequence of the uniqueness of its form, we do not think objectionable. It does not, it is true, tend to prove the making of the forged instrument by the prisoner, but it tends strongly to show the *quo animo* with which it was made and uttered. It could not deprive the prisoner of the benefit that might arise to him from an inspection and construction of the instrument by the court, for, we have seen that, as the ambiguity which arises from the singular introduction of inapt words in some parts of the face of the note was patent, the court must pronounce upon the meaning of the paper upon inspection, unaided by parol proof; the jury has nothing to do with it. Evans v. Steele, 2 Ala. 104.

Any fact or circumstance which has a tendency to show the intention with which the act constituting the offence was done, is admissible both for and against the prisoner, unless such circumstance be found in his own declarations, and these he cannot introduce in his own favor, although if they are brought out by the prosecution he has the right to all that was said at that time.

There is no error in the proceedings of the court below, and the conviction must be allowed to stand.

On inspecting the record in this case, we find that, by an order of the court below, the original note, on which the forgery is assigned, is attached to the transcript. This is improper. That paper belongs alone to the files of the court below, and should not be allowed to be taken out of them for

any purpose. The hazard of losing it should never be incurred; for, had we reversed the decision in this case, and the note in passing from court to court should be lost, and it could not be shown that it had passed into the hands of the prisoner, he would stand on much higher ground on the second, than he occupied on the first trial. The act of sending it here was not only improper, but wholly useless and unnecessary. We are not allowed to look at it for any purpose. The law which allows this court jurisdiction to review the acts and decisions of inferior courts, requires that it shall act alone on transcripts of the records and proceedings of those courts. Clay's Dig. 306, § 1; ib. 308, § 13. Their files are sacred; we have no power to invade them; and if, by any means they reach this court, we have no right to inspect or use them for any purpose whatever.