# Burns v. The State.

*Indictment for Murder.*

1. *Exception to admission or rejection of evidence.* — When an exception is reserved to the admission or rejection of evidence, the bill of exceptions should set out the evidence so admitted or rejected, in order to enable the appellate court to pass judgment intelligibly on the question intended to be presented.

2. *Admissibility of prisoner's declarations or confessions.* — In a criminal case, the prisoner cannot give in evidence his own declarations, unless they form a part of the *res gestæ*; but when any part of his declarations have been given in evidence against him, he has the right to call for all that he said at the time, in reference to the particular transaction.

3. *Threats made by deceased against prisoner.* — The general rule is, that threats of personal violence, made by the deceased against the prisoner, and not commu-

nicated, are not competent evidence for the prisoner, unless they form a part of the *res gestæ ;* but where it is shown that the deceased sought an interview with the prisoner, and they walked away together, out of the presence and hearing of witnesses, the declarations of the accused when starting to the place where he met the prisoner, showing his hostile feelings, and his motive in seeking the interview, are admissible evidence for the prisoner, though not communicated to him prior to the killing, as they may enable the jury to determine who was the aggressor, and thereby generate a doubt as to the guilt of the prisoner.

4. *Weight of confessions or admissions as evidence.* — Confessions of a party in a criminal case, like admissions in a civil case, if deliberately made, and precisely identified, are often most satisfactory evidence; but if made verbally, and unsupported by other evidence, they should always be cautiously weighed.

FROM the Circuit Court of Blount.

Tried before the Hon. WILLIAM J. HARALSON.

The prisoner in this case was indicted in September, 1870, for the murder of Pickens Musgrove; pleaded not guilty to the indictment; was tried at the March Term, 1873, convicted of murder in the second degree, and sentenced to the penitentiary for ten years. On the trial he reserved several exceptions to the rulings of the court, which are thus stated in the bill of exceptions : " The State having given evidence tending to show that at a certain time, about the 5th day of January, 1870, in said County of Blount, the deceased came to the still-house of his father, Edward Musgrove, about four o'clock in the evening, and inquired if the defendant was there, or had come yet; and being told that he had not, proceeded to load his pistol, and sharpen a knife which he had obtained at the still-house, saying that he intended to have a settlement with the defendant; that the defendant rode up about this time, driving some of his father's hogs, got down from his horse, and was about fastening him, when the deceased went up to him, and spoke to him, and they walked off together; that they were absent some time, when a pistol shot was heard; that the defendant came up to the still-house, in from five to twenty minutes thereafter, and called for some persons there to go with him, to help take care of the deceased, whom he had shot; that two persons went with him to the place, some four hundred yards distant, where they found the deceased, wounded, and carried him to the still-house, whence he was taken to his father's house, where he died in a few days from the wound; and that the defendant, when he came to the still-house after the shot was heard, was wounded in the leg, as if with a sharp knife, and had some scratches on his throat. The defendant, by his attorneys, asked said witness, Henry Brasseal, who stated the above, if the defendant, when he came to the still-house for help, stated anything else than what is above set forth, to wit : ' that he wanted them to go with him, to help take care of the deceased, whom he had shot ? ' The witness replied, that he did say something else at the time. The de-

fendant then asked said witness to state all that he (defendant) said at that time. The state's attorney objected to the witness answering this question, and the court sustained the objection; to which the defendant, by his counsel, excepted.

"During the further progress of the cause, the defendant offered to prove, by one Cassey Speigle, who was staying at the house of said Edward Musgrove in January, 1870, where the deceased also lived at that time, that she was present when the deceased started to the still-house on the evening he was shot; and that he told her, when starting, that he intended to kill the defendant, and said, ' When you hear from me, you will hear that him or me is dead.' The solicitor for the State objected to the admission of this evidence, and the court sustained the objection, because the same had not been communicated to the defendant; to which ruling the defendant excepted.

"In the further progress of the cause, the defendant offered to prove, that when he came to the still-house to obtain help for the deceased, and told the witness that he had shot him, he also said, ' and I fear I have killed him. I would not have done it for the world, but he was trying to kill me, and I could n't help shooting him.' To this the solicitor for the State objected, and the court sustained the objection; to which the defendant excepted.

"In the further progress of the cause, the defendant offered to prove, by Nancy Dutton and Taylor Dutton, that the deceased, the day before he was shot, came to their house in the morning, on his way to Blountsville, and in the night, on his return home, and, on both occasions, inquired if they had seen the defendant pass that day, or knew where he was, and stated his intention to kill him. The State objected to the admission of this evidence, and the court sustained the objection, because the same had not been communicated to the defendant; to which ruling the defendant excepted.

"In the further progress of the cause, the defendant offered to prove, by one Calvin Hudson, that on the day before, or, at most, a very few days before the deceased was shot, he had a conversation with him in Blountsville, in which the deceased wanted to borrow his pistol, and [said] that he wanted to make a certain man take back something he had said; and that he (witness) understood that the defendant was the ' certain man ' mentioned. To which the solicitor for the State objected, and the court sustained the objection, on the ground that the same had not been communicated to the defendant; to which ruling the defendant excepted.

"In the further progress of the cause, the State having introduced certain testimony tending to prove confessions, or

[Burns v. State.]

admissions of guilt made by the defendant, the court was requested to charge the jury, in writing, as follows : ' Admissions are a species of evidence which, from the ease with which they can be fabricated, and the liability to misapprehend what was said, should always be scrutinized and received with great caution by the jury.' Which charge the court refused to give, and the defendant excepted.

" The defendant also requested the court, in writing, to charge the jury as follows : ' That although they may be satisfied, from the evidence, that the previous general character of the witness Johnson, for truth and veracity, was good ; yet if they believe, from the evidence, that said witness has made different or contradictory statements of the circumstances attending the alleged confession, they may look to these contradictory statements to ascertain whether or not, and if so, how much, credit should be given to the testimony.' The court refused to give this charge, and the defendant excepted.

" The defendant also asked the court to give the following charge, which was in writing : ' The defendant's guilt must be made out by evidence of a conclusive nature and tendency, and must exclude any reasonable supposition of innocence.' The court refused to give this charge, and the defendant excepted to its refusal."

HAMILL, PALMER & DICKINSON, for the prisoner.

BEN. GARDNER, Attorney General, for the State.

BRICKELL, J. — The general rule, often announced by the court, is, that a party to a proceeding, civil or criminal, taking a bill of exceptions, must affirmatively show error to his prejudice, or the proceedings will not be disturbed. *Eskridge* v. *The State*, 25 Ala. 30 ; *Butler* v. *The State*, 22 Ala. 43. In this case, the State having given in evidence the declarations of the prisoner on his return to the still-house after the shooting, it was his clear right to adduce the whole of what he said at that time, in reference to the unfortunate transaction. 1 Green. Ev. § 218. This rule has been announced by this court so often, and it is so clearly expressed in the text-books, that we are not ready to presume any court has infringed it. The bill of exceptions does not inform us what the prisoner said at the same time, and in the same connection, which the court declined to permit him to give in evidence. Though it may have been part of the same conversation of which the State gave evidence, we cannot say that it had any reference to the killing, or to the circumstances attending the killing ; nor can we say that its exclusion did not benefit, rather than prejudice

the prisoner. An exception to the admission or rejection of evidence should always disclose the evidence admitted or rejected, or a revising court cannot intelligibly pass judgment on it.

2. The prisoner offered to prove exculpatory declarations made by him when he returned to the still-house after the shooting, which the court excluded. The bill of exceptions does not inform us whether these declarations formed part of the conversation of which the State gave evidence, or whether they were made in another and subsequent conversation. Of course, we cannot say that the court erred in rejecting them. It may be proper for us to repeat the rule by which the court should be governed in determining the admissibility of this evidence. The prisoner cannot give in evidence his own declarations, unless they form part of the *res gestæ;* but if the State gives evidence of his confessions, declarations, or admissions, it is his right to lay before the jury all that he said at the time, referring to the killing, and the circumstances attending it. It is the province of the jury to determine the credibility and weight of the declaration or confession. The jury must weigh the whole, rejecting no part unless for some sufficient reason; but they may, in the exercise of their judgment, give more credence to one part than to another, or may deny credence to a part, or to the whole. *William* v. *The State*, 39 Ala. 532; *Chambers* v. *The State*, 26 Ala. 59; 1 Green. Ev. § 218.

3. It appears from the evidence set out in the bill of exceptions that the killing was at or near a "still-house;" that the deceased reached the still-house before the prisoner, and, on reaching the house, inquired for the prisoner; that, being informed the prisoner was not there, he obtained a knife, and sharpened it, and loaded his pistol, declaring that, when the prisoner came, "he intended to have a settlement with him;" that the prisoner rode up about this time, and while he was fastening his horse, the deceased spoke to him, and they walked off together; that the report of a pistol was heard in a short time, and the prisoner returned to the still-house alone, having a wound in his leg, apparently made by a knife, and some scratches on his throat. There was no evidence, so far as disclosed by the bill of exceptions, of the circumstances of the killing, or of the conduct or condition of the parties at the time of the killing. The prisoner offered to prove that the deceased, when starting to the still-house, said that he intended to kill the prisoner, and used these words, "When you hear from me, you will hear that him or me is dead." The State objected to the admission of this evidence, and the court sustained the objection, because it did not appear that these

[Burns v. State.]

declarations, or threats, had been communicated to the prisoner.

The general rule is, that threats of personal violence, made by the deceased against the prisoner, and not communicated, are not admissible in evidence, unless they form part of the *res gestæ*. *Powell* v. *The State*, 19 Ala. 577; *Carroll* v. *The State*, 23 Ala. 28; *Dupree* v. *The State*, 33 Ala. 380. It is impossible to define accurately the declarations which should be treated as parts of the *res gestæ*. The main facts in this case are the killing, and the circumstances attending it. Declarations coincident with these in point of time, whether made by the deceased or by the accused, would certainly be admissible. It is not the point of time at which the declarations were made, so much as their connection with the main fact, that determines the question of admissibility. *Gandy* v. *Humphries*, 35 Ala. 617. If they are contemporaneous with the main fact, connected with it, and elucidate it, or the state of the party's mind when that is material at the time of the happening of the main fact, they are admissible. Their weight as evidence must be determined by the jury. They are not admissible to palliate or excuse a murder or a killing shown by other evidence to be felonious. They are admissible only to show the mental *status* of the deceased, and his motive in going to the still-house, and in inviting an interview with the prisoner. If there is no evidence of the facts attending the killing, this evidence may enable the jury to determine who was the aggressor, and may properly generate a doubt of the guilt of the accused. *Campbell* v. *The State*, 16 Illinois, 18; *People* v. *Scoggins*, 37 Cal. 677. It should have been admitted, and the jury permitted, under proper instructions, to determine its value. Such evidence is of little value, if it is admissible, when the prisoner has provoked the affray, or when it affirmatively appears that the deceased was not in a condition to execute his threat, or was making no effort to do so. *Carroll* v. *The State*, 23 Ala. 28.

The declarations or threats, made by the deceased to Hudson and to others, were properly rejected. They do not form part of the *res gestæ*, and are not contemporaneous with it. The threats made to the witness Cassey Speigle, as we construe the bill of exceptions, were made when the deceased was starting to the still-house, on the afternoon of the killing, and were admissible under the facts recited in the bill of exceptions, on the same reasoning on which the declaration of a party leaving home, as to his destination and the objects he has in view, are received. *Pitts* v. *Burroughs*, 6 Ala. 733.

4. The charge requested, as to the weight or value of admissions or confessions as evidence, is abstract, so far as the bill of

exceptions discloses. It does not appear that any admission or confession of the prisoner was given in evidence, and the court might well have refused, on this ground, to give the charge. The rule settled by this court is, that admissions made by a party to a civil proceeding (and confessions in a criminal case, so far as their weight as evidence is concerned, stand on the same footing), deliberately made, and precisely identified, are often most satisfactory evidence; but that evidence of mere verbal admissions, unsupported by any other evidence, should always be cautiously weighed, because of their liability to be misunderstood, the facility of fabricating them, and the difficulty of disproving them. *Wittick* v. *Keiffer*, 31 Ala. 199; *Garrett* v. *Garrett*, 29 Ala. 439.

The bill of exceptions does not disclose what was the evidence of the witness Johnson, nor that there was any evidence that he had made contradictory statements, or statements variant from the evidence he gave. The charge asked was not warranted by any fact disclosed in the bill of exceptions; and for this, if for no other reason, it was properly refused. The other charges requested were so framed as to have a tendency to mislead the jury, and were properly refused. The charges given were not excepted to, and are not subject to revision. For the error we have noticed the judgment is reversed, and the cause remanded. The prisoner will remain in custody until discharged by due course of law.