[No. 20124.  In Bank — June 25, 1886.]

# THE PEOPLE, RESPONDENT, v. H. C. PHILLIPS, APPELLANT.

CRIMINAL LAW — FORGERY — INSTRUCTIONS. — In a prosecution for uttering and passing a forged promissory note, certain instructions quoted in the opinion, *held*, not misleading or calculated to confuse the jury.

ID. — VARIANCE BETWEEN INSTRUMENT AS RECITED AND PROVED. — In such a prosecution, where the information purports to set forth the instrument alleged to have been forged *in hœc verba*, and a word found in the instrument proved is omitted from the instrument as recited, or a word inserted in the instrument as recited is not in the instrument proved, the variance is immaterial if the change in no manner or for any purpose alters the signification.

ID. — IMMATERIAL VARIANCE. — The information alleged the forgery of a promissory note, described as payable "to H. C. Phillips, or order." The note given in evidence did not contain the word "to" immediately before the words "H. C. Phillips, or order." *Held*, that the variance was immaterial.

ID. — EVIDENCE OF SUBSEQUENT TRANSACTIONS — INTENT. — Evidence of transactions had between the defendant and the person alleged to have been defrauded, after the delivery of the note, is admissible, if it tends to show that the note was used with a fraudulent intent, and to secure a valuable benefit from the person to whom it was delivered.

ID. — INSTRUCTION — ASSUMPTION OF FACT. — An instruction which assumes a fact as proved will not warrant a reversal if the fact is admitted or there is no shadow of conflict of evidence with respect to it.

ID. — IMPEACHED WITNESS — DISREGARDING TESTIMONY. — The evidence of a witness who has been impeached may be disregarded by the jury, and the court may so instruct.

APPEAL from a judgment of the Superior Court of Napa County, and from an order refusing a new trial.

The defendant was convicted of forgery, in uttering and passing to W. A. Elgin a certain promissory note as a true and genuine note of one C. H. Fitch, with intent to defraud Elgin, defendant knowing the note to be forged. The evidence showed that the defendant was indebted to one Liddell in the sum of $55.50, for which he gave his check on the Nevada Bank. Liddell indorsed the check to Elgin, and sent it to him for collection. Elgin, having discovered that the defendant had no

money in the bank, went to him and demanded what he intended to do about it. The defendant then told Elgin to hold the check, that he had a note and mortgage on which he thought he could raise the money. The same day the defendant gave the note alleged to have been forged to Elgin, and a mortgage, each of which purported to be signed by C. H. Fitch. The mortgage was intended to secure the note, and each were in favor of the defendant. On the following day Elgin hired a team, drove the defendant to Napa City, and there the defendant had the mortgage recorded, Elgin paying for the expenses of the team and the cost of the recording. The defendant thereupon executed an assignment of the mortgage to Elgin for the nominal sum of $73.40, which included the Liddell check, the team hire, fee for recording mortgage, fee for drawing assignment, and probable fee for recording the assignment. The further facts are stated in the opinion of the court.

*Coghlan & Coombs,* for Appellant.

*Attorney-General Marshall,* for Respondent.

McKINSTRY, J. — The court below charged the jury as follows:—

"The defendant is not charged in the information with the forgery of the mortgage. That has been introduced in evidence here for the purpose of showing the intent; showing the intent that the party had in forging (if you find that he did forge), and in passing this promissory note; showing the intent of the passing or the attempt to pass to Elgin for the purpose of prejudicing, damaging, or defrauding him. He is not charged here, I say, with the forgery of that mortgage, and if you find that he did so, still you do not pass upon it in this case as to the question of his guilt or innocence under the information."

And elsewhere in the charge the court said: "You [the jury] being satisfied that the defendant did voluntarily forge this note; that he, knowing it to be such, passed it to Mr. Elgin, with the intent to injure or defraud Mr. Elgin," etc. And in still another place the court said: "As I stated before, gentlemen, your first point is, Was this note forged by the defendant? Did he know it was forged? Did he pass it or attempt to pass it to W. A. Elgin, to the injury of Elgin?"

It is insisted by appellant that the foregoing was misleading, and calculated to confuse the jury with respect to the offense charged, and comes within the rule laid down in *People* v. *Monahan,* 59 Cal. 389. There is no doubt that the instructions given in *People* v. *Monahan, supra,* were confused and misleading.

But by section 470 of the Penal Code, the uttering or passing of a forged promissory note as true and genuine, knowing the same to be forged, is declared to be a forgery. In the last two of the citations from the charge above set forth, the "forgery" spoken of is clearly shown by the context to mean the passing of a note knowing it to be forged. The information charges "forgery, committed as follows," and then proceeds to aver that the defendant did "feloniously, etc., utter, publish, pass, etc., a certain false and forged promissory note," etc. The crime was forgery as alleged, and the question properly put to the jury was, Did the defendant commit that crime as averred in the information? Upon like reasoning, the instruction first above recited was not fatally erroneous.

The appellant urges that his objection to the promissory note given in evidence should have been sustained.

The promissory note alleged to be forged is set out in the information "in the words and figures following":—

"NAPA COUNTY, CAL., June 1, 1885.

"On or before June 1, 1886, I promise to pay *to* H. C. Phillips, or order, the sum of two thousand dollars, for value received, drawing interest at the rate of ten per

cent per annum. This note is secured by mortgage, and is a part thereof, bearing even date.

" Witness, M. SILBAUGH.

"C. H. FITCH.

(Indorsed)　　　　　　"H. C. PHILLIPS."

At the trial, the instrument introduced in evidence was in all respects like that set forth in the information, except that the note given in evidence did not contain the word "to" immediately before the words "H. C. Phillips, or order."

Counsel for defendant objected to the promissory note offered as irrelevant, incompetent, and immaterial, and because of the variance. The court overruled the objection, and defendant duly excepted to the ruling.

Counsel justly claim that the rule which requires that an instrument pleaded *in hæc verba* must be proved as laid is not one of construction, but a rule of identity and description.

It is said by Wharton that when an indictment undertakes to set forth a document *in hæc verba,* or according to its "tenor," or "as follows," or "in words and figures following," then *any* variance as to the words of the document, unless such variance be a mere fault of spelling, is material. He adds: "But it is otherwise as to the variance of a letter amounting only to misspelling." (Crim. Ev., sec. 114.)

It is not, however, only when rule *idem sonans* can be applied that the variance is immaterial. A misspelling has been held not to be a fatal variance when the word as spelled in the instrument means nothing, and has a different sound from the word intended, as "undertood" for "understood." The variance of a letter or the omission of a letter, to be material, must change the word attempted to be written into another word having a different meaning. (Wharton's Crim. Pl. & Pr., sec. 173.) Wharton, citing Heard's Criminal Pleadings and Taylor's Evidence, adds: "The great rigor of the old English law in

this respect was one of the consequences of the barbarous punishments imposed. A more humane system of punishment was followed by a more rational system of pleading." (Wharton's Crim. Pl. & Pr., sec. 173.)

Bishop, in his work on Criminal Procedure, thus lays down the rule: "If the indictment professes to set out a written instrument by its tenor, whether the law has made so exact an averment necessary in the particular case or not, the proof must conform thereto with *almost* the minutest precision." (Sec. 487.)

Section 1021 of our Penal Code provides: "If a defendant was formerly acquitted on the ground of variance between the indictment or information and proof, . . . . it is not an acquittal of the same offense. (See also sec. 1165.) In *Butler* v. *State*, 22 Ala. 48, it would seem that the note was set forth in full in the indictment. The court said that to render the note admissible, "it is not necessary that there should be a literal correspondence between it and the papers set out in the counts under which it is offered. If the correspondence be such as to prevent the prisoner from being a second time in jeopardy for the same cause should he be acquitted, . . . . it will be sufficient."

The case of *Quigley* v. *People*, 2 Scam. 301, is very like that now before us. It was there held that a note payable to " B. Aymar *or* bearer" was properly admitted in evidence when the description *in hæc verba* was " B. Aymar, bearer."

In *State* v. *Street*, Tayl. 158, an omission of a figure, which " changed the sense," was held fatal.

In *United States* v. *Mason*, 12 Blatchf. 497, the court recognized the rule that where an indictment purports to set forth an exact copy of a bank bill, the description must conform to the instrument given in evidence, but added: "A mere literal variance will not be fatal." There the indictment omitted the word "to" from the phrase " pay to the bearer." It was held the variance

was not material, because the defect was not such as " changed the sense " in any way.

In an indictment an order was said to be signed by " Jno. Hulse "; the order offered in evidence appeared to be signed " Jna. Hulse "; in the indictment the place was called " Fayelville," in the order it was " Fayetville." Held, not fatally variant. (*United States* v. *Hinman,* Bald. 293.)

We think the true rule is, that if the variance does not change the sense in any way, it is not material. We are not to be understood as saying that when a contract alleged to have been forged is set forth in the indictment or information in words and figures, any other contract is admissible the *legal effect* of which is the same as that alleged and set forth in terms in the indictment; but that, when in the indictment a word found in the instrument proved is omitted from the instrument as recited, or when a word is inserted in the instrument described which is not in the instrument proved, and the change in no manner or for any purpose alters the signification, the variance is unimportant. Applying the rule to the case at bar, the court did not err in overruling the objection to the note offered in evidence.

Appellant insists that all the testimony of the witness Elgin as to what took place after the delivery of the note alleged to be forged (and the mortgage purporting to secure it) was inadmissible; that the passing of the note was complete when it was delivered to the witness; and that it was then delivered to Elgin, as security for a past indebtedness due from defendant to *Liddell.* And in this connection it is urged: 1. That *Elgin* was not injured or defrauded; and 2. That an intent to defraud was not proved by proving that the note was deposited as security for a past indebtedness.

The jury were authorized to infer from the evidence that, while the note was originally deposited with Elgin as agent of Liddell as security for the debt due the latter

(to be retained until the defendant should borrow money on the note and mortgage and pay the Liddell debt), Elgin was subsequently induced by the defendant to furnish a team, drive him or have him driven to Napa, in order to have the mortgage recorded, where, as defendant asserted, he believed he could borrow money on the second note.

The witness Elgin testified that he did furnish a carriage and drive the defendant to Napa, in compliance with defendant's request.

It was fairly inferable from the transaction that it was understood between the parties that the note alleged to be forged should be retained by Elgin as security for the expense to which *he* should be put in furnishing the team, and for his services in driving it. And there was evidence to sustain a finding that from the time of the agreement to furnish a team, etc., Elgin received and held the note as security, not only for the debt due Liddell, but for the expenses to which he should be put by reason of that agreement. In other words, there was evidence tending to prove that the note was used to secure a valuable benefit from Elgin.

Appellant urges that the court erred in admitting evidence of the assignment of the mortgage, inasmuch as the assignment was made the day after the passing of the note and the recording of the mortgage, and after Elgin had incurred the expense of a team, and his service had been performed, and after he had paid the recorder's fee for registering the mortgage; that the assignment was no part of the *res gestæ*, and was in no way connected with the offense charged,—the uttering or passing of the forged note.

But we think with the court below that the assignment of the mortgage was admissible as tending to show the intent of the defendant in passing the note to Elgin. The jury were clearly instructed that the defendant was not charged in the information with forging or uttering

the mortgage, and even if the mortgage was forged or feloniously passed, that fact would not justify a verdict against the defendant, but the fact could only be considered as tending to prove his intent in passing the note.

It is insisted that the expense to which the witness Elgin was put was not incurred "upon the strength of the note, but of the mortgage." The mortgage purported to secure the note; Elgin (there was evidence to prove) was to retain the note; and the evidence tended to show that Elgin was induced to retain the note as security for *his* expenses by defendant's promise to record the mortgage.

Appellant claims the court violated the constitution by charging as to matter of fact. (Art. 6, sec. 19.) The court said: "It appears by the testimony that defendant gave one Liddell a check," etc.,—proceeding to state matters as to which there was no conflict in the testimony. Of course, this mode of charging a jury should be carefully avoided. But it has been held here that an instruction assuming a fact does not demand a reversal if the fact is admitted, or there is no shadow of conflict of evidence with respect to it.

In stating the testimony, the trial judge should be careful to give the very words, or the substance of the words, of a witness.

The witness Silbaugh testified that he did not subscribe the note or mortgage as a witness, and in effect that he did not as a witness thereto swear before the notary to the execution of the mortgage. Elgin testified that Silbaugh did swear to the execution of the mortgage, as appears in the notarial certificate. The testimony of Elgin contradicted, and if credible disproved, the testimony of Silbaugh. The declaration of Silbaugh to Elgin, if made, that Fitch signed the note and mortgage in his presence, tended to impeach his testimony on the stand that neither were signed by Fitch in his presence. But Silbaugh's declarations to Elgin were not evidence

that Fitch in fact signed the note or mortgage. If Silbaugh was impeached, the jury could disregard his testimony. The court was justified in so informing the jury, and in informing them that the discarding of his testimony did not control in determining whether the note was forged, but left that question to be decided on the other evidence.

Other instructions were asked by the defendant and refused. But the jury were charged substantially as requested.

Judgment and order affirmed.

ROSS, J., MYRICK, J., SHARPSTEIN, J., and McKEE, J., concurred.