## PEOPLE v. MUNROE.[*]

### No. 20,973; July 25, 1893.

33 Pac. 776.

**Forgery—Order for Teacher's Salary.**—Since the Assignment by a public school teacher of salary not yet earned is void, the false making of such an instrument does not constitute forgery. But if the instrument containing such intended assignment contain likewise a guaranty of payment of the sum assigned, and a provision that, if the sum is not collected by a certain time, it will be paid by the assignee, it is valid in part, and hence is a subject for forgery.

**Criminal Trial—Reading Evidence from Preliminary Examination.**—Where a witness telegraphed and wrote to the district attorney from another state that, owing to business engagements in that state, he could not be present at the trial, which began about twelve days thereafter, and the return to a subpoena for such witness was that he could not be found within the county, there was a showing of such "due diligence" as justified the reading at the trial of his evidence taken at the preliminary examination before a committing magistrate, under Penal Code, section 686, providing for the reading of such evidence upon its being satisfactorily shown to the court that the witness "with due diligence cannot be found within the state."

**Forgery—Witness Refreshing Memory.**—On a Prosecution for Forgery, where the prosecuting witness states that he was present when the complaint was drawn by the district attorney, that they compared the copy therein of the instrument alleged to have been forged with the original, and that such copy was correct, it is proper, if the original is in defendant's possession, and he refuses to produce it after notice so to do, to allow the witness to refresh his memory as to the original by reference to the copy in the complaint.

**Witnesses.**—Where a Part of an Answer is not Responsive to the question, and a part is directly so, but the whole is relevant, material, and competent, it is proper to refuse to strike it out as being irrelevant, immaterial, and incompetent, and as being irresponsive to the question.

**Forgery—Witness Refreshing Memory.**—On a Prosecution for forgery, a witness testifying as to the forged instrument cannot refresh his memory by reference to the copy contained in the information, which he does not, of his own knowledge, know to be correct.

**Municipal Corporations.**—An Order Drawn Directly on a City, instead of on the auditor thereof, is not void on its face.

---

[*]For subsequent opinion in bank, see 100 Cal. 664, 38 Am. St. Rep. 323, 24 L. R. A. 33, 35 Pac. 326.

**Forgery — Indictment — Variance.**—Where an Information for forgery sets out the forged instrument as an order addressed to a city, the fact that it was in reality addressed to the auditor of the city does not constitute a variance.

APPEAL from Superior Court, Los Angeles County; B. N. Smith, Judge.

George Munroe was convicted of forgery, and appeals. Affirmed.

W. T. Williams and Wm. E. Cox for appellant; W. H. H. Hart, attorney general, for the people.

HAYNES, C.—The defendant was convicted of forgery, and this appeal is from the judgment and from an order denying his motion for a new trial. Appellant's principal contention is that the information does not state facts which constitute a public offense, for the reason that the forged instrument would, if it were genuine, be void upon its face. Said instrument is as follows:

"No. 78.                    Los Angeles, Cal., Feb. 1, 1892.
"To the city of Los Angeles, Cal.:

"Please deliver to the State Investment Co., or order, my warrant upon the treasurer of said city for the month of February, 1892; and I hereby authorize the State Investment Co., or order, to receipt for and collect the sum of $80 due me as teacher; and, for value received, I hereby sell, assign, and set over to the State Investment Co., or order, the sum of $80, with interest at the rate of ten per cent. per month from March 2, 1892, and I guaranty payment of the above-stated amount on or before March 2, 1892, authorizing the State Investment Co., or order, to collect any warrants drawn in my favor until the amount of this claim and interest are paid in full, and, in case suit is instituted, to collect this claim or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorneys' fees in said suit.

"[Signed]    HELEN HENRY."

The information charges that defendant forged said instrument with intent to defraud one J. W. Jackson, to whom he transferred it by indorsement.

It is well settled in this state and elsewhere that the indictment or information must show that the forged instrument is such that, if genuine, it could be made available in law to work the intended fraud or injury; that, if it is a nullity upon its face, no case is made, unless by averment it can be shown how it could be made to operate injuriously or fraudulently: People v. Tomlinson, 35 Cal. 506; People v. Ferris, 56 Cal. 445; Ex parte Finley, 66 Cal. 262, 5 Pac. 222. It is also well settled that the unearned salary of a public officer is not assignable, because against public policy, and that any instrument intended to operate as such assignment is void: Bangs v. Dunn, 66 Cal. 72, 4 Pac. 963; Bliss v. Lawrence, 58 N. Y. 422, 17 Am. Rep. 273. This principle, however, is not confined to those commonly called "public officers," though we think teachers in the public schools may be properly designated as such. Their employment is a public one, made under the authority of law, and their compensation is paid out of public funds provided by law for that purpose: See Pol. Code, secs. 1696–1704. In Arbuckle v. Cowtan, 3 Bos. & P. 328, quoted with approval by the court of appeals of the state of New York in Bliss v. Lawrence, supra, it was laid down as a general principle "that all such profits as a man receives in respect to the performance of a public duty are from their very nature exempt from attachment and incapable of assignment." The attorney general, on behalf of the people, does not controvert either of the foregoing propositions, but contends that the instrument in question is something more than an assignment of the unearned salary of a teacher; that it contains a guaranty of the payment of the moneys there mentioned; that Helen Henry had a right to make such guaranty; and that it could be legally enforced. This contention we think is sound, and must be sustained. There is nothing criminal in the assignment of the unearned salary. It is simply void because it is against public policy. The officer whose duty it is to draw the warrants for teachers' salaries was not bound to regard the assignment, or to issue the warrants to the assignee. Notwithstanding the assignment he could, without creating any liability against himself or the city, issue the warrant to the teacher. This would seem to have been a contingency understood or anticipated, and as a protection to the assignee the guaranty was inserted. The test

is, could an action have been maintained against Helen Henry
for the recovery of the warrant if the instrument had been
genuine? The instrument admits that she has received value
for the assignment of her warrant for the month of February.
The warrant, if earned, would be for the sum of $80; but inter-
est on that sum at ten per cent per month from March 2,
1892, is promised if the money is not then paid, and there is
the further express promise to pay such additional sum as the
court may adjudge reasonable as attorneys' fees in case suit
is instituted to collect the claim. There are many cases where
money paid upon an illegal contract may be recovered. In
contracts which contemplate the performance of some act in-
volving moral turpitude and therefore malum in se, no action
can be maintained by either party to the contract. But this
is not that case. It is not out of special regard for the officer
as an individual that the assignment is held void, but for the
protection of the public by securing to the officer that com-
pensation without which he may be unable to discharge the
duties of his office. But he is not prevented from incurring
personal obligations, nor from devoting his salary when re-
ceived to the payment or discharge of such obligations. Credit
may be given him or money loaned to him upon the promise
to pay out of his salary when received, and a written agree-
ment so to pay is not illegal. The fact that payment was at-
tempted to be secured by an assignment of the warrant, such
assignment being void, does not affect the validity of the
guaranty or promise to pay the amount. When a salary war-
rant is issued, it is assignable, and the assignee may collect or
receive payment of the warrant; and it will be observed that
the guaranty is not that the warrant will be issued to the as-
signee, but is for the "payment of the above-stated amount."
Upon the face of the instrument the transaction appears to be
an advancement or loan of $80, to secure which the borrower
assigns her unearned salary for the month of February, au-
thorizing her assignee to receive the warrant and collect the
money thereon, but providing that, if the money is not col-
lected on or before March 2d, that she will pay the amount,
and, as a further security, authorizes the assignee to collect
other warrants drawn in her favor "until the amount of this
claim and interest are paid in full." The assignment is void,

but the debt and obligation to pay is legal and binding, and therefore the subject of forgery.

A large number of exceptions were taken to rulings of the court upon the admission of evidence, several of which are argued by appellant's counsel.

J. W. Jackson, the prosecuting witness, was not present at the trial, and his testimony taken before the examining magistrate was read in evidence to the jury. It is insisted by appellant that the preliminary evidence offered by the district attorney did not show that Jackson was absent from the state at the time of the trial. This evidence consisted of a telegram from Jackson to the district attorney, dated at Kansas City, Missouri, September 30, 1892, in reply to a telegram from the district attorney addressed to him at that place, and two letters, the first postmarked Kansas City, September 22, 1892, and the second postmarked at the same place, October 13, 1892, in each of which he said it was impossible for him to come to California on account of business relations he had formed, and expressed regret that he could not do so. A subpoena for this witness was duly returned by the sheriff of Los Angeles county that the witness could not be found within his county. Upon this evidence the testimony of the witness Jackson, taken upon the examination of appellant before the committing magistrate, was received. Section 686 of the Penal Code provides that such testimony may be read upon the trial ''upon its being satisfactorily shown to the court that he (the witness) is dead or insane, or with due diligence cannot be found within the state.'' The actual absence of the witness from the state is not required to be shown, but it must appear that he cannot with ''due diligence'' be found within the state. We think due diligence was shown. During the ten or eleven days intervening between the date of Jackson's last letter and the time of the trial it was possible for him to have come within the state, but it certainly could not have been necessary for the people to have placed a guard upon every line of travel into the state to enable them to satisfy the court that he could not be found within it.

The instrument alleged to have been forged, a copy of which appears to have been set out in the complaint in the justice's court, was not produced upon the examination. The witness Jackson (whose testimony taken upon the examination before

the magistrate was being read to the jury) had stated that he was present when the complaint was drawn by the district attorney, that they compared it, and that the copy in the complaint was correct; whereupon the justice said to the witness: "You may go on and state, refreshing your recollection as you please, the contents of that instrument." Upon the reading of this testimony in the superior court, appellant's counsel objected to the above direction given by the justice to the witness, and the testimony of the witness following, which appears to have been a reading of that portion of the complaint. The superior court overruled the objection, and permitted the testimony in relation to the contents of the paper to be read to the jury. The direction of the justice was too broad, but it does not appear that the witness improperly refreshed his recollection. He was present when the copy was taken from the original; assisted in comparing it. The copy thus made was competent as secondary evidence of the contents of the original, the original, after it was copied, having gotten into the possession of the defendant, and was not produced, though its production was demanded. We think the superior court did not err in overruling appellant's objection.

A part of an answer given by the witness was not responsive to the question, and a part was directly responsive. Appellant moved to strike out the answer on the ground that it was irrelevant, immaterial and incompetent, and also that it was not responsive to the question. The first objection was properly overruled, as the whole of the answer was relevant, material, and competent; and the second objection was also properly overruled, as the motion went to the whole answer, and part of it was directly responsive to the question.

Thomas F. Smith, deputy city auditor of the city of Los Angeles, was called for the prosecution, and testified that he saw the Helen Henry order in the office of the city auditor; that Mr. Jackson had it; and that a warrant was drawn in favor of Helen Henry, and delivered to Jackson. Upon cross-examination he testified that "the orders were addressed to the city auditor and city treasurer—to both." Upon redirect examination the witness said: "I do not remember whether the word 'auditor' after the words 'to the city' was written or printed in. I think it was there." At this point in the re-examination of the witness, the deputy district attorney

showed the witness the information containing a copy of the
forged instrument, with the request, "Now look at this." De-
fendant's counsel objected that it was not a paper that the
witness saw or executed or made, and that it was nothing by
which the witness could refresh his recollection; to which the
attorney for the people replied: "It don't make any differ-
ence. It is a paper proven to have been an exact copy of the
original." The court overruled the defendant's objection,
and permitted the witness to examine the copy contained in
the information, and thereupon the witness further testified:
"As I stated, I thought the word 'auditor' was written in
there, but I would not be positive. I would not like to swear
that it was or was not, but at the same time I thought it was
there. These forms are gotten out in that way. I thought
it was there because it was customary to put it there." The
mode adopted by the prosecution in the re-examination of this
witness was most extraordinary, and the court erred in per-
mitting it. An inspection of the writing set out in the in-
formation could not by any possibility refresh his recollection.
It might lead him to distrust his memory, or convince him that
he was mistaken, but, if so, it could only be because he re-
lied upon the statement of another that "it is a paper proven
to have been an exact copy of the original." It was for the
jury to say whether the forged instrument was correctly set
out in the information, and counsel had no right to assume,
for the purpose of affecting the testimony of the witness, that
it was proven to be a correct copy. The means which may be
used to refresh the recollection of a witness, as embodied in
section 2047 of the Code of Civil Procedure, has long been
the settled law, and there are no precedents to the contrary.
The question remains, however, whether the defendant was
prejudiced by this error. If the alleged variance between the
instrument as set out in the information and the original was
material, the error was prejudicial; otherwise it was not. The
defendant, as he had a right to do, assumed two apparently
inconsistent positions. He contended that the instrument as
set out in the information, being addressed to the city of Los
Angeles, and not to the auditor, was for that reason void;
and that the original was in fact addressed to the auditor,
and therefore was a different instrument from that for the
forgery of which he was being tried, or, in other words, that

there was a variance between the information and the proof. An immaterial variance must be disregarded. There are two aspects in which the variance in this case must be considered: (1) As to whether the validity of the instrument, if genuine, was affected; and (2) whether, if the forged instrument was addressed to the auditor, as the defendant sought to prove, a conviction or acquittal upon the information in this case could be made available as a bar to another prosecution upon an information in which the instrument should be shown to be addressed to the auditor.

1. As to the validity of the instrument as set out in the information, the defendant requested the court to charge the jury that "an order drawn directly on the city of Los Angeles, and not drawn on the auditor of said city, is void on its face, and could not be enforced." This instruction was refused by the court, and we think correctly. The auditor is but the agent of the city. A corporation can only act by or through its officers, who are its agents. The address to the city was quite sufficient, and fully authorized the auditor to act.

2. We see no ground upon which it could be successfully contended that a conviction under this information would not bar a prosecution upon the instrument in question if it should afterward appear that it was in fact addressed to the auditor, and a new information should so charge it. Wharton, in his work on Criminal Pleading and Practice (section 173), says: "The great rigor of the old English law in this respect was one of the consequences of the barbarous severity of the punishment imposed. A more humane system of punishment was followed by a more rational system of pleading."

The order in question was for the salary of a certain person for the month of February, 1892, to the State Investment Company, indorsed by the defendant to J. W. Jackson, and a warrant was in fact issued thereon to Jackson. It is the order upon which a warrant was issued to Jackson for the salary of Helen Henry for the month of February, 1892, for the sum of $80, which the defendant has been found guilty of forging. It is not like the case of a counterfeit bank bill, where a letter or a figure may be the only means of distinguishing it from thousands of others of the same denomination purporting to be issued by the same bank. In People v. Hughes, 29 Cal. 258, the defendant was charged with arson, committed to defraud

an insurance company. In the indictment the insurance company was named the "Hartford Insurance Company." The name as proved on the trial was the "Hartford Fire Insurance Company." The court said: "It is sufficient to say that, under our practice, this is no ground for the arrest of judgment": Page 262. This remark was made independently of the section of the practice act which also justified the conclusion of the court. In People v. Phillips, 70 Cal. 61, 11 Pac. 493, the information alleged the forgery of a promissory note described as payable "to H. C. Philips, or order." The note given in evidence did not contain the word "to." Held, the variance was immaterial: See, also, People v. Tonielli, 81 Cal. 275, 22 Pac. 678. As the omission of the words "city auditor" was not essential either to the validity of the instrument or its identification, we must hold, both upon principle and authority, the error under consideration was not prejudicial.

Other rulings upon evidence are assigned for error, most of which are mentioned only by number, and are not discussed. We have, however, examined the whole record, and find no error which would justify a reversal. The exceptions to the instructions to the jury given and refused have been sufficiently covered in the foregoing opinion. We advise that the judgment and order appealed from should be affirmed.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.