# Maddox *v.* The State.

## *Murder.*

(Decided Feb. 18, 1909.  48 South. 689.)

1. *Evidence; Acts and Declarations of Defendant.*—The conduct,
demeanor and expression of a defendant at or about the time of the
homicide are admissible in evidence against him, but unless part of
the res gestae are not admissible for him; if, however, the state in
troduces his confessions, declarations or admissions, then the de-
fendant may give in evidence all that he said in connection therewith
and the circumstances attending it, but cannot make this the basis
of showing what he did or said on other occasions.

2. *Homicide; Evidence; Acts of Defendant.*—It was proper to show
in a prosecution for homicide that after the affray the defendant
went home and got a gun, and within fifteen or twenty minutes came
back, and that when he returned he told certain persons to turn de-
ceased aloose or get out of the way as he was going to shoot him;
and the state having shown this, the defendant should have been
permitted to prove that just before leaving home he stated that he
was going after one F. and have him make deceased stop his fuss, as
part of the res gestae of that matter, though not a part of the res
gestae of the killing.

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Collins Maddox was convicted of murder in the second
degree, and appeals.  Reversed and remanded.

The witness Lucinda Murray, being on the stand, was asked the following questions and made the following answers, to which objections were made and overruled, and to which exceptions were reserved: "(1) State whether Collins Maddox, after the cutting, went home, and got a gun, and came back up there. A. He went home, and got a gun, and came back there, where she and others were with Jesse Davis [the man who was alleged to have been killed by a cut from a knife]. Collins Maddox was gone 15 or 20 minutes before he came back. (2) State what Collins Maddox said when he came back. A. Turn him loose, and I will finish the damn————." The defendant then asked the witness: "Did not the defendant say, at his house, as he was going out to get his mule, just after the fuss came up down there, that he was going down to Mr. Joe Foster's and get him to have the fuss stopped, or make him stop cutting up?" Objection was sustained to this question. The state then introduced Fred Bailey, and the solicitor asked the witness to state whether, after the cutting, Collins Maddox went off and came back again, and the witness answered that he did go off and come back again. Objection was interposed and overruled to the question and answer. Further questions: "State what defendant had when he came back, if anything. A. He had a shotgun. Q. State what the defendant said when he came back, if anything. A. Get out of the way and let me shoot him. I'm going to finish him." The defendant then asked the witness the following question, to which objection was sustained: "Did not the defendant, at his home, just before you left, say that he was going after Mr. Joe Foster, and have him make Jesse Davis stop that fussing down there?" The defendant then introduced Maddox, and offered to ask him the same question as to what the defendant said about getting Mr. Fostser to stop the fuss,

to which objection was sustained, and this question, "State whether the defendant, at the time he went to the lot, stated for what purpose he was going, and whether he stated where he would go," to which objection was sustained, and this question, "State whether or not the defendant stated, at the time he started for the lot, where he was going," to which objection was sustained. On cross-examination the solicitor asked this witness the following question: "State what you were doing when Collins came back down there where the cutting occurred. A. That he was holding Jesse Davis up." Objection was interposed and overruled to both question and answer, as they were to the following question and answer to the same witness: "While you were holding Jesse Davis up, to keep his entrals out of the sand, did not Collins Maddox tell you to get out of the way, that he was going to finish Jesse Davis?" and the answer. "Turn him loose, I am going to shoot him." While the defendant was on the stand, he testified that he had ordered Davis to go away from the house and Davis replied: Dam you and your yard, too; I'm not going anywhere.'

DANIEL COLLIER, for appellant. The state having brought out a part of a transaction and what was said, the defendant was entitled to his version of it, and the court erred in excluding the testimony as to the complete transaction.—Burns v. The State, 49 Ala. 374; 39 Ala. 532; 26 Ala. 63; Williams v. The State, 103 Ala. 33: State v. Drake, 113 Ala. 9; Davis v. The tSate, 92 Ala 20; Williams v. The State, 130 Ala. 116; Fonville v. The State, 91 Ala. 39 .

ALEXANDER M. GARBER, Attorney-General, for the State. Error is not shown in the action of the court in

excluding evidence.—*McManus v. The State,* 36 Ala
292; *Harkness v. The State,* 129 Ala. 78; *Jones v. The*
*State,* 116 Ala. 468.

MAYFIELD, J.—It has been uniformly held in this
state, in homicide cases, that the conduct, demeanor,
and expressions of the accused, at or about the time of
the homicide, are matters admissible in evidence against,
but not for him, unless part of the res gestæ.—*Mc-*
*Manus' Case,* 36 Ala. 292; *Blount's Case,* 49 Ala. 381;
*Miller's Case,* 107 Ala. 40, 19 South. 37; *Johnson's Case,*
17 Ala. 623; *Henry's Case,* 79 Ala. 42; *Armor v. State,*
63 Ala. 173; *Levison v. State,* 54 Ala. 520; *Reeves v.*
*State,* 96 Ala. 33, 11 South. 296; *Pate v. State,* 94 Ala.
14, 10 South. 665; *Campbell v. State,* 23 Ala. 44. This
court has probably gone as far as any other in holding
such evidence admissible against the accused and inad-
missible for him. In the case of *Hainesworth v. State,*
136 Ala. 13, 34 South. 203, it was held that evidence as
to the facial expression of the accused, how he looked
or appeared, at a prayer meeting several hours before
the homicide, which was committed at the house of the
deceased some distance from the place of the prayer
meeting, was admissible against him. In *Campbell's*
*Case,* 23 Ala. 79, it was held that the state could prove
the appearance of the accused on the evening of the
day of the homicide, and on the following day, but that
the accused could not prove his appearance or expres-
sions three days subsequent to the killing. The reason
given in this case, and in other authorities, for the rule,
is that evidense of the conduct, demeanor, acts, expres-
sions, or appearance of the accused, shortly before, at
the time of, or shortly after, the homicide, is admissible
against him, because his conduct, appearance, and ex-
pressions, on these occastions, are presumed to corres-

pond with the truth, but that they operate in the nature of admissions, and therefore they are often admissible as such, but that the defendant can no more make his conduct or appearance evidence for him, than he could his declarations of innocence, as this would permit him to manufacture his own evidence, which, of course, is not, and should not be, allowable.

The writer of this opinion thinks that this court and some trial courts have gone too far, in certain of the cases reported, in admitting such evidence against the accused; but the case at bar is not one of the class. The evidence admitted for the state over the objections of the defendant, and that excluded by the court, which was offered by the defendant for the purpose of showing his conduct prior to the time of and after the homicide, was in each instance properly admitted or excluded, except as hereafter appears.

It is insisted with some force by the learned counsel for the defendant that the evidence offered by the defendant as to these questions was admissible, and improperly excluded, because the state had first given in evidence of these matters, and the defendant then had the right to lay before the jury all he said and did at the time and on the occasions referred to by the state's evidence on the theory that, where a part of a conversation or transaction is admitted at the offer of one party, the whole or other parts thereof are admissible, if offered by the other. The cases cited by counsel for defendant lay down the correct rule, which is: The accused cannot give in evidence his own declarations, unless they form a part of the res gestæ; but if the state gives in evidence his confessions, declarations, or admissions, then he may give in evidence all that he said in the particular confession, declaration, or admission, and the circumstances attending it, but he cannot make this the basis of show-

ing what he said or did on other occasions. None of the evidence offered by the defendant and excluded by the court, except as hereafter referred to, was admissible under this rule. What was said by Justice Brickell, in the case of *Burns v. State,* 49 Ala. 374, which case is cited by counsel for appellant, is pertinent and applicable to show there was no error in excluding the evidence offered by the accused, which we quote: "The prisoner offered to prove exculpatory declarations made by him when he returned to the stillhouse after the shooting, which the court excluded. The bill of exceptions does not inform us whether these declarations formed a part of the conversation of which the state gave evidence, or whether they were made in another and subsequent conversation. Of course, we cannot say that the court erred in rejecting them."

However, the declarations of the accused, made at or about the time he left home, as to the object and purpose of his leaving, stand upon another footing. They are a part of the res gestæ of this matter, though not a part of the res gestæ of the killing.—*Kilgore v. Stanley,* 90 Ala. 523, 8 South. 130; *Pitts v. Burroughs,* 6 Ala. 733; *Olds v. Powell,* 7 Ala. 652, 42 Am. Dec. 605; *Harris v. State,* 96 Ala. 24, 11 South. 255; *Burton v. State,* 115 Ala. 10, 22 South. 585; *Campbell v. State,* 133 Ala. 81, 31 South. 802, 91 Am. St. Rep. 17. The object and purpose of his leaving home at this time was properly made a subject of inquiry on the trial. His guilt or innocence, or, at least, the degree of the crime, might properly depend upon the question whether he pursued deceased for the purpose of killing him, or whether he left home, not for that purpose, but for the purpose (as he claimed) of going to Mr. Foster's to get the latter to come to his house to quell the disturbance.

[Letcher v. The State.]

It follows, therefore, that the trial court erred in refusing to allow proof of the declarations of the accused, made at or about the time of his leaving home, to the effect that he was going over to get Mr. Foster to come there and stop the row or disturbance. For this error, the judgment of conviction must be reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and DENSON, JJ., concur.