# CASES.

IN THE

# SUPREME COURT OF ALABAMA

### NOVEMBER TERM 1908-1909

## Fowler *v.* The State.

*Murder.* ·

(Decided May 20, 1909.   49 South. 788.)

1. *Homicide; Degree of Crime; Instructions.*—Where the evidence was wholly circumstantial, that of the state tended to show bruises on the body while that of the accused tended to show that the bruises was the effect of decay, and it was conceded that the immediate cause of death was a blood clot on the brain, but whether the clot was the result of pathological causes, or of violence, was a disputed question on the evidence, it was open to the jury to find that death, if it resulted from blows inflicted was caused as well by the first as by some other instrument, and that, therefore, accused was entitled to have the jury instructed as to manslaughter in the 1st degree, in the absence of evidence of a positive intention.

2. *Same; Murder and Manslaughter; Elements; Actual Intent.*—An actual intent to kill is not an essential ingredient of either murder or manslaughter in the 1st degree, as a general proposition of law.

3. *Same; Murder in the Second Degree; Elements of Offense.*—Murder in the second degree is the infliction of an act of violence which produces death done with the intent to kill, or the infliction of an act of violence from which, ordinarily, in the usual course of events, death or great bodily harm might result.

4. *Same; Manslaughter in the First Degree.*—The voluntarily setting in motion or application of unlawful force or the doing of an act greatly dangerous to the lives of others, whereby death ensues, may constitute manslaughter in the 1st degree, however free the action may be from the actual purpose to kill.

5. *Same; Evidence.*—Where the issue was whether certain discolorations on the deceased's body were caused pathologically or by violence, the fact that the witness had helped to prepare the body of another woman who had died in the community shortly before the trial, and under somewhat similar circumstances, and that her

1—161

body had discolorations which appeared after death, and not as the result of violence, was irrelevant and properly excluded.

6. *Criminal Law; Not Guilty; Issues.*—The plea of not guilty in a criminal case puts in issue every essential element of the crime charged in the indictment.

(Anderson, Denson and McClellan, JJ., dissent.)

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Frank Fowler was convicted of murder in the second degree, and appeals. Reversed and remanded.

The following charges were refused to the defendant: "(1) The court charges the jury that the defendant cannot be convicted of murder in the second degree or manslaughter in the first degree unless the defendant had the intention to kill Missouri Fowler, or intended to do an act of violence from which ordinarily, in the usual course of events, death or great bodily harm may be the consequence. (2) The court charges the jury that the defendant cannot be convicted of murder in the second degree or of manslaughter in the first degree unless the defendant had the intention to kill Missouri Fowler, or intended to do an act of violence from which ordinarily, in the usual course of events, death or great bodily harm might be the consequence. (3) The court charges the jury that the defendant cannot be convicted of murder in the second degree unless he inflicted an act of violence upon Missouri Fowler which produced her death, and at the time he inflicted such act he had the intention to kill her, or ·intended to do an act of violence from which ordinarily, in the usual course of events, death or great bodily harm may be the consequence." Charge 4 is a duplicate of charge 3. "(5) The court charges the jury that the defendant cannot be convicted of murder in the second degree unless he had the intention to kill Missouri Fowler, or intended to do an act of violence from which ordinarily, in the

[Fowler v. The State.]

usual course of events, death or great bodily harm might be a consequence. (6) Although the jury may believe from all the evidence in this case that the death of Missouri Fowler was caused by some act of the defendant, yet the jury cannot find him guilty of murder in the second degree, unless they should further believe from the evidence, beyond all reasonable doubt, that such act was inflicted with the intention to kill Missouri Fowler, or unless the defendant intended to do an act of violence from which ordinarily, in the usual course of events, death or great bodily harm might have been the consequence."

The defendant offered Mrs. Sam Holland as a witness, who offered to state that very recently, not more than three or four weeks prior to the trial, a lady died in the same community in which Mrs. Fowler lived; that witness was there when she died; that she was taken suddenly, and died instantly; that witness helped wash and dress the lady an hour or so after she died. Defendant's counsel then asked the witness if, at the time she washed and dressed the body of the dead lady, there were any spots or discolorations on the body, and, if so, on what portion of the body were the spots or discolorations, and to describe them. The state objected, whereupon defendant's counsel stated to the court that they expected to show by this witness that within an hour or two after she died there were red spots or discolorations upon her body, about her back, shoulders, and cheeks, and that these spots and discolorations appeared on her body after she died, and that no violence had been inflicted upon her.

ESPY & FARMER, for appellant.—The 1st and 2nd charges requested by the defendant should have been given.—*Harrington v. The State*, 83 Ala. 7; *Williams v.*

[Fowler v. The State.]

*The State,* 83 Ala. 16; *Hornsby's case,* 94 Ala. 55; *Hall v. The State,* 40 Ala. 698; *Lewis' case,* 96 Ala. 10; *Dennis v. The State,* 112 Ala. 64; *Harrington v. The State,* 83 Ala. 13; *White's case,* 84 Ala. 421. Under the authority of *Webb's case,* 100 Ala. 47, and *Winter's case,* 103 Ala. 1, defendant was entitled to have instructions as to manslaughter in the 1st degree. On these authorities, it is insisted that the former opinion in this case should be modified or overruled.

ALEXANDER M. GARBER, Attorney-General, and THOMAS W. MARTIN, Assistant Attorney-General, for the State.—The statement of the witness that the little girl was walking fast, was a shorthand rendering of the facts.—*Thornton v. The State,* 113 Ala. 43; *Fowler v. The State,* 45 South. 913. The fact that another woman had died under somewhat similar circumstances and that discolorations had appeared on her body without any act of violence being inflicted, was immaterial to any issue in the case.—*Campbell v. The State,* 23 Ala. 44; *Fincher v. The State,* 58 Ala. 215. The insistence that the refused charges should have been given is settled adversely to the contention of the defendant in the following cases.—*Smith v. The State,* 45 South. 626; *Fowler v. The State,* 45 South, 913; *Clements v. The State,* 50 Ala. 117. Under the facts in this case, the defendant was not entitled to have instructions as to manslaughter.—*Mitchell v. The State,* 60 Ala. 26; *Brown v. The State,* 109 Ala. 70.

DOWDELL, C. J.—This is the second appeal in this case. See *Fowler v. State,* 155 Ala. 21, 45 South. 913. The evidence on the last trial, as on the former, was wholly circumstantial as to the cause of the death of the person charged in the indictment to have been mur-

dered. The evidence of the expert witnesses as to
whether death was the result of natural causes, or of
violence inflicted by some one, was in conflict. That the
immediate and direct cause of death was a blood clot
upon the brain of the deceased was without conflict
or dispute; but whether the clot upon the brain was the
result of pathological causes, or of violence inflicted,
was, from the evidence adduced on the trial, a disputed
question. The evidence on the part of the state tended
to show bruises on the person of the deceased, while
that on the part of the defendant tended to show that
what were supposed to be bruises and effects of violence
were merely discolorations, the effects of decay; that is,
results of pathological causes.

As to how the bruises, if such they were, were pro-
duced—whether by blows given with the fist or with
some instrument—there was no positive evidence. These
were matters rested in inference, and to be ascertained
and determined from the nature and character of the
described bruises, and were, of course, questions of fact
exclusively within the province of the jury. From the
tendencies of the evidence it was as open to the jury to
find, if death resulted from blows inflicted, that such
blows were given with the fist, as it was to find that
they were given with a stick or some other instrument;
and on this state of the evidence we are of the opinion
that the defendant was entitled to have the court charge
the jury as to manslaughter in the first degree, in the
absence of evidence of a positive intention, and to this
extent the opinion on the former appeal is modified.

When this case was here on a former appeal (155
Ala. 21, 45 South. 913), it was said by the court, speak-
ing through Denson, J.: "There is no testimony tend-
ing to show the circumstances attending the killing, or
to show that it was done in heat or passion; nor is there

any evidence that the deceased came to her death as a result of a blow from the fist. The defense made was that the deceased came to her death from natural causes —that the defendant had no agency whatever in producing her death. Consequently charges 4, 7, and 8 were properly refused as being abstract"—citing *Dennis' Case,* 112 Ala. 64, 20 South. 925. While it is true that the defense set up was that the deceased came to her death from natural causes, and that there was no direct or positive evidence that her death was the result of a blow from the fist, yet the plea of not guilty put in issue every essential element of the crime charged in the indictment; and eliminating from all consideration the nature of the defense set up, and considering only the evidence of the state, and assuming therefrom that death was the result of violence inflicted by the defendant, it was a matter resting in inference, from the circumstances testified to, whether the inflicted violence was done with the fist or with an instrument calculated to produce death. On this view the charges are not subject to the criticism of being abstract.

As a general proposition of law, an actual intent to kill is not an essential ingredient in either the crime of murder or of manslaughter in the first degree. The principle in question is well stated in *Lewis v. State,* 96 Ala. 6, 11 South. 259, 38 Am. St. Rep. 75, where, in speaking of manslaughter in the first degree, it is said: "An actual intention to take life is not an essential element in this offense, or, indeed, in murder. The voluntary setting in motion or application of unlawful force, or the doing of an act greatly dangerous to the lives of others, whereby death ensues, will suffice to supply the legal elements of evil intent, however free the action may be from actual purpose to kill." Again, in *Reynolds v. State,* 45 South. 894, this court, speak-

[Fowler v. The State.]

ing through Haralson, J., states the law as follows: "To constitute manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily harm may result. It is not necessary that the perpetrator intended or willed the death of the party"—citing *Lewis v. State, supra; Harrington's Case,* 83 Ala. 13, 3 South. 425; and *White's Case,* 84 Ala. 421, 4 South. 598.

We adhere to the law as above laid down in the cited cases; and, in so far as there is anything in what is said in the opinion in this case on the former appeal opposed thereto, to that extent it is overruled. On the law as above stated, and under the evidence in this case, we are of the opinion that the written charges numbered from 1 to 6, which were refused to the defendant, should have been given. They are unlike charges 3, 5, and 6 condemned on the former appeal, which only hypothesized the absence of an actual intention to kill.

The only other question relates to the exclusion of the testimony of Mrs. Sam Holland, on the objection of the state, as shown on page 20 of the transcript. This evidence was irrelevant, and there was no error in sustaining the objection thereto.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

SIMPSON, MAYFIELD and SAYRE, JJ., concur. ANDERSON, J., dissents.

DENSON, J. (dissenting). The facts disclosed by the present record do not make a case materially different from the case as presented by the record on the former appeal. The general statement of facts in the opin-

ion of the Chief Justice is correct, with the exception that to it should be added that there is testimony tending to show that finger marks were found on the neck of the deceased and that her neck appeared to be swollen. No one was present when death came to the deceased, except the defendant, her husband; he and she occupying the same bed. According to the husband's testimony he was asleep when his wife died, and was wholly unconscious of her death until, upon awakening, he placed his hand upon her and found her cold and lifeless. It is necessary to repeat but little of the testimony and note its tendencies, in order to bring clearly in view the writer's position. The testimony (Mrs. Lewis') tended to show that, in the preparation of the corpse for burial on the night of the death, spots or bruises were found on the body—one below the knee, one on her back, and one on her cheek bone, and something like finger prints on her throat, and that her throat was swollen.

Conceding that there is no direct testimony that the defendant killed his wife, yet it cannot be denied, and is not denied, that it was open to the jury to find, from the evidence, that she came to her death by violence, and that defendant inflicted that violence. These being questions for the jury, and the jury having determined them against the defendant, the next and only other inquiry was the degree of the defendant's guilt. The defendant, it must be remembered, makes no pretense of self-defense, and, indeed, so far as the evidence goes, claims nothing for himself except that he did not kill his wife. In the opinion by the writer on the former appeal of this case it was said: "There is no testimony tending to show the circumstances attending the killing, or to show that it was done in the heat of passion; nor is there any evidence that the deceased came to her death as a result of a blow from the fist."

I feel sure that the above was a correct statement (and, on the present record, that the statement needs no qualification). Hence in the opinion on the former appeal it was said of charges 4, 7, and 8, which sought in effect to have the jury consider whether or not manslaughter in the first degree might not be affirmed of the facts in issue, that said charges were abstract; and the effect of the former decision of the case was that the facts of the case did not authorize or call for a charge upon the law of manslaughter—in other words, that the defendant was either guilty in no less measure than murder in the second degree or he was innocent, there being no pretense of a killing in self-defense, or any evidence in palliation or mitigation.

I think Chief Justice Stone well understood the law of homicide, and he said (*Mitchell v. State,* 60 Ala. 26, 32) : "Manslaughter is the unlawful killing of a human being without malice; that is, as the result of passion-heated blood, caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than an assault, either actually committed, or menaced under such pending circumstances as reasonably to convince the mind that the accused had cause for believing and did believe he would be presently assaulted." Taking this as a correct definition (and I presume no one will doubt its correctness), and applying it to the evidence in the case, why, may I not ask, should the former opinion be modified, and the case sent back to be submitted on another trial in respect to the law of manslaughter? The defendant does not say that his wife assaulted him, that she was about to assault him, that he believed she was about to assault him, or even that he was acting under passion-heated blood. None of these excuses are resorted to by him. He simply says, "I didn't do it." But the court, in the opinion of the Chief Justice, say for him, in effect, that while it is true the

only defense put forward by the defendant is that he did not kill his wife, and he does not offer any evidence of palliation. yet the jury should be required to enter upon an inquiry as to defendant's guilt of manslaughter. To the mind of the writer, the decision, considered in the light of the facts of the case, is not only without precedent but is contrary to our own decisions. See *Gafford's Case,* 125 Ala. 1, 10 (third headnote), 28 South. 406; *Rogers' Case,* 117 Ala. 9 (second headnote), 22 South. 666.

As is intimated above, the court now modify the former opinion, taking the ground that it was "a matter resting in inference, from the circumstances testified to, whether the inflicted violence was done with the fist or with a weapon calculated to produce death". In short the court hold that where a killing is shown, with no explanation given and no justifying circumstances in evidence, it must be left to the jury to determine the question of malice, unless the testimony shows that an instrument calculated to produce death was used; or, to put the concrete case, that the request by the defendant in regard to the law of manslaughter should have been given by the court, notwithstanding the killing was done, if done, in secret and without justifying cause. I do not so understand the law. The old rule, as laid down by text-writers and followed by courts of last resort in many of the states, was that "malice is presumed when an unlawful homicide is shown to have been committed and no circumstances in mitigation or justification appear." Again that "every homicide is presumed unlawful, and when the mere act of killing is proved, and nothing more, the presumption is that it was intentional and malicious." Kerr on Homicide, § 77; 1 East's Crown Law, 340; *Brown's Case,* 12 Minn. 538, 543 (Gil. 448); *McLeod's Case,* 1 Hill (N. Y.) 436, 37 Am. Dec.

328; *York's Case,* 9 Metc. (Mass.) 95, 43 Am. Dec. 373, 2 Leading Crim. Cases, 519; *McDaniel's Case,* 8 Smedes & M. (Miss.) 401, 47 Am. Dec. 93; *Preuit's Case,* 5 Neb. 377, 384; *Hill's Case,* 2 Grat. (Va.) 595; Davis' Case, 25 Ohio St. 369, 373; *Choice's Case,* 31 Ga. 425; *Clarke's Case,* 35 Ga. 75; *Holme's Case,* 54 Mo. 153, 163; *Lane's Case,* 64 Mo. 319; *Epperson's Case,* 5 Lea (Tenn.) 291, 299; *Bryant's Case,* 7 Baxt. (Tenn.) 67, 74; *Clements' Case,* 50 Ala. 117, 119; *Hadley's Case,* 55 Ala. 31; *Brown's Case,* 109 Ala. 70, 89, 20 South. 103.

The rule has been slightly modified, and is thus accurately stated: "Where the killing is proved, and no more, the law will imply malice and make the act murder; but, when all the facts and circumstances of the killing are in evidence, then the jury must say from the evidence what was the intention with which the act was committed. Then it becomes a matter of proof—no longer implication."—*Alexander's Case,* 30 S. C. 74, 84, 8 S. E. 440, 14 Am. St. Rep. 879; *Vollmer's Case,* 24 Neb. 838, 842, 40 N. W. 420; *Harris' Case,* 8 Tex. App. 90. In *Mackally's Case,* reported in 9 Coke, 67b, the law is stated as follows: "If one kills another without provocation, and without any malice prepense which can be proved, the law adjudges it murder, and implies malice; for by the law of God every one ought to be in love and charity with all men, and therefore, when he kills one without provocation, the law implies malice, and he may be indicted generally that he killed of malice prepense, for malice implied by law, given in evidence, is sufficient to maintain the general indictment." Chief Justice Shaw, in *York's Case, supra,* commenting on the law as above quoted from *Mackally's Case,* approvingly said: "This case appears clearly to hold the point that if the fact of killing is proved, and on this proof of the homicide no excuse or extenuation appears,

[Fowler v. The State.]

no other proof of malice need be given. The malice is proved by the act, and a conviction of murder must necessarily follow. It is an act done malo animo, and without excuse or justification which can be proved."— Foster's Crown Law, 255; *King v. Oneby,* 2 Ld. Raym. 1485; 1 Hawk. c. 31, § 32; *Mosler's Case,* 4 Barr (Pa.) 264; *Merrill's Case,* 2 Dev. (N. C.) 269.

I submit, as a sound proposition, and one supported by reason and authority, that the mere fact of a killing by violence carries with it the implication of malice, where no witnesses were present, and where the circumstances and mode of the killing are unknown and unproved (*Clements' Case,* 50 Ala. 117; *Head's Case,* 44 Miss. 731; *Lamb's Case,* *41 N. Y. 360), and, further, that the implication obtains until rebutted by the accused with evidence showing excuse or justification. —*Head's Case, supra.*

The question of corpus delicti is not embraced in this discussion, for the reason that there is evidence in the record to support the finding of the jury that the deceased came to her death from violence and that the violence was inflicted by the defendant. But the evidence does not disclose the circumstances under which the killing occurred. No witnesses were present. If the killing was done by the defendant, certainly the acts through which he accomplished the death of his wife were excessive and cruel. This cannot be doubted, from the very fact that death ensued. Therefore I am fully warranted in asserting that the case in hand falls squarely within the rule, in its modified form stated above, in respect to the implication of malice.

It is axiomatic that every one is presumed to understand the probable result of his act; and when an unlawful killing is shown and no explanation is offered, and no facts in connection therewith are shown, justi-

fying, excusing, · or extenuating it, the implication of malice necessarily arises.—*Mitchell's Case,* 60 Ala. 26; *Cribbs' Case,* 86 Ala. 613, 616, 6 South. 109. The defendant stands here in one of two categories: First, as having unlawfully killed his wife; second, as an innocent man. If in the first category, he is before the court with the unlawful killing, a killing executed in secrecy, fastened upon him, and without a scintilla of evidence of justification, pallation, or excuse; and because, forsooth, there is no direct evidence that a deadly weapon was employed in effecting the death of his wife, it is judicially held that the implication of malice does not necessarily arise, notwithstanding the beating administered to the woman was so extreme and cruel as to result in death. It is further held that, in this state of the case, the defendant was entitled to have the court charge the jury in respect to manslaughter in the first degree—in short that under such circumstances the jury should have been required to determine whether or not the killing was the result of "passion-heated blood."

Where, may I ask, is there to be found in this record a scintilla of evidence upon which such an inquiry could be rested? Certain it is the wife is dead, and, if her death resulted from violence inflicted by the defendant, her husband, certain again it is no witness has been found to testify that he or she was present and saw or witnessed the circumstances of the killing. Therefore, what? Necessarily a case of murder in the second degree, because a killing in secret, without qualifying circumstances, must be regarded as having been voluntary and designed, and, therefore, effectuated in malice; the law imputing malice to such a homicide. Cases supra. See, also, *Brown's Case,* 4 Tex. App. 275; *Farrer's Case,* 42 Tex. 265; *Hadley's Case,* 55 Ala. 31.

I refrain from further discussion; but, on the considerations and authorities adverted to, I feel constrained to the belief that the case, when here on a former appeal, was correctly decided, and that the law as laid down in the opinion then promulgated is sound, and should not be overruled. I therefore dissent, and in these views and dissent am joined by Justice McClellan.