17 So.2d 687

**RAINEY v. STATE.**

**7 Div. 763.**

Supreme Court of Alabama.

April 20, 1944.

Wm. N. McQueen, Acting Atty. Gen., and Geo. C. Hawkins, Asst. Atty. Gen., for petition.

Hood, Inzer, Martin & Suttle and L. B. Rainey, all of Gadsden, opposed.

460

FOSTER, Justice.

There are two situations on certiorari to the Court of Appeals from this Court to review their opinion in respect to the facts shown by the record. They present different theories for such review, but both are resolved by applicable principles of law. One of them subjects for review the legal effect of the evidence stated by the Court of Appeals to be shown by the record, regardless of their inferences from it.

Given the evidence as recited by the Court of Appeals, the question is, what is its legal effect? As on this appeal, that question is usually presented by a ruling in the trial court on a request for the affirmative charge. When we pass on the legal effect of the evidence as justifying the requested charge, we do not review any factual finding by the Court of Appeals, nor their judgment as to the weight of the evidence. Craft v. Standard Accident Ins. Co., 220 Ala. 6(12), 123 So. 271; Frick Co. v. Monroe, 220 Ala. 1, 123 So. 262; Lancaster v. State, 214 Ala. 2(5), 106 So. 617.

If the evidence is not set out in the opinion of the Court of Appeals its finding as to what the evidence shows is conclusive on our review, whether or not the question relates to the affirmative charge (Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829); but whether such finding justifies the affirmative charge as a matter of law is reviewable. If the evidence is set out in the opinion, we will review its sufficiency to justify the affirmative charge, though the Court of Appeals may have made a finding of facts from that evidence.

The other theory is based upon the finding or conclusion of the Court of Appeals as to the weight of the evidence, and from it a factual conclusion is declared. The result so reached being one of fact not of law, our review is limited to the question of whether the Court of Appeals reached the correct legal result from such finding.

This question is often presented to the trial court by a motion by the unsuccessful party for a new trial on the ground that the verdict is contrary to the great weight of the evidence and therefore unjust, and should be set aside. The trial judge must first make a ruling on that question, and on appeal to the Court of Appeals that court will draw its own conclusion from the evidence, giving the traditional presumption resulting from the conclusion of the trial court. When the Court of Appeals thus finds, we do not review that finding (New River Coal Co. v. Files, 215 Ala. 64, 109 So. 360), though we will review its application to the law, when that situation is presented.

We have in this case an illustration of both aspects of a review. The Court of Appeals has set out in their opinion the substance of the evidence which tends to support a conviction, and has held that no aspect of that evidence justifies a finding that defendant was guilty of manslaughter in the first degree. That presents a legal question to us on certiorari. That is, whether or not the jury was authorized to draw the inference of guilt.

But a different status exists as to a review of the holding by the Court of Appeals that the verdict of the jury was contrary to the great weight of the evidence and should have been set aside by the trial court. Recognizing that such holding by the Court of Appeals is not subject to review on certiorari by this Court, the Attorney General has not asked that we do so.

The defendant complains that the jury was not clearly instructed by the trial court as to the elements of wantonness in its relation to manslaughter in the first degree. That defendant did not intentionally kill the deceased is claimed to be manifest from the evidence, and that it is not shown that

he wantonly did so, when wantonness is properly defined and understood. Assuming that the evidence does not show a positive intent to kill, our only concern in reviewing the request for the affirmative charge is whether or not the evidence was such as to justify a submission of the question of a wanton killing to the consideration of the jury.

■ Defendant correctly concedes that a wanton killing is a voluntary killing within the definition of manslaughter in the first degree. Section 320, Title 14, Code of 1940. A positive intent to kill is not necessary. Harrington v. State, 83 Ala. 9, 3 So. 425; Williams v. State, 83 Ala. 16, 3 So. 616.

■ It is said in those cases that when there is an act of violence from which ordinarily in the usual course of events death or great bodily harm may be a consequence, the killing which results is voluntary. This has specific reference to the consequences of an intentional injury without an intentional killing. The statute defining manslaughter in the first degree, as pointed out, uses the word "voluntary". Those cases hold that an intentional injury from which death results is not a voluntary killing unless death or great bodily harm ordinarily in the usual course of events may be expected to result. That principle is what those cases were dealing with. They were not directly considering wantonness as the equivalent of intention. They were considering a willful injury, not a wanton injury. They presuppose an intentional act of violence on the person injured. But to be a voluntary killing, an act of violence intentionally directed at another is not necessary. The statute which provides that a voluntary killing is a necessary element of manslaughter in the first degree is satisfied in that respect if defendant does "an act greatly dangerous to the lives of others, whereby death ensues." Fowler v. State, 161 Ala. 1(4), 49 So. 788, 790; Lewis v. State, 96 Ala. 6, at page 10, 11 So. 259, 38 Am.St.Rep. 75; see, Section 314, Title 14, Code of 1940. This is apparently intended to make a wanton killing punishable as a voluntary killing.

In Reed v. State, 225 Ala. 219, 142 So. 442, on the theory of a wanton killing, defendant's conviction of murder in the second degree was sustained, and in Curlette v. State, 25 Ala.App. 179, 142 So. 775, and Reynolds v. State, 24 Ala.App. 249, 134 So. 815, the theory was declared, without undertaking to be precise in expressing all the elements of a wanton killing. See, also Hammell v. State, 21 Ala.App. 633, 111 So. 191.

There is of course a distinction in the operation of the mind between a willful injury and a wanton injury, but they are usually treated as legally equivalent one to the other in culpable status. Porterfield v. Life & Casualty Co., 242 Ala. 102, 5 So.2d 71, where the cases are cited.

This legal situation has been properly applied to the criminal law when the question is whether a result is voluntary.

■ We note that in the opinion of the Court of Appeals reference is made to the fact that in wantonness the accused must have actual knowledge that another occupies a position of peril. True, it is sometimes so stated as in the cases they cite, where other aspects of wantonness were not involved. Copeland v. Cent. of Ga. Ry. Co., 213 Ala. 620, 105 So. 809, and in Pratt v. State, 27 Ala.App. 301, 171 So. 393. But it is also as well settled that it is culpable wantonness when the accused has knowledge that some person (any person) is likely to be in a position of danger and with conscious disregard of such known danger, he recklessly proceeds on a dangerous course which causes the disaster, though he may not know whether any person is actually in danger. Godfrey v. Vinson, 215 Ala. 166(6), 110 So. 13; 15 Ala.Dig. Negligence, p. 301, ⟨key⟩11.

■ So the controversy here is not only whether defendant in running his automobile against deceased, if he did so, did an act which ordinarily in the usual course of events would cause death or great bodily harm—that would be conceded; but whether he did so voluntarily, which carries the thought also of wantonness. More particularly, it is whether it was culpable wantonness if defendant saw a situation which indicated to him the fact that someone was probably on the highway at night in a dangerous position on or about a motor car of some kind facing him with headlights shining, and well over on his proper side of the road, and when it was raining in a downpour, when he had no windshield wiper operating, and his vision was dimmed, to drive at an excessive rate of speed (forty to sixty-five miles an hour) on a straight road, but on the wrong side, contrary to section 9, Title 36, Code of 1940, so close to the standing car plainly ahead as to side-

sweep it and thereby strike deceased and cause his death  There was evidence from which the jury could find that those facts occurred as set out in the opinion of the Court of Appeals, and that defendant saw such a situation

It is not for us nor the Court of Appeals to find whether that was a wanton act equivalent to a voluntary killing in considering the affirmative charge.  But we think that the question was one for the jury.

· It results that the judgment of the Court of Appeals reversing the judgment of the trial court must be affirmed because of their holding that the verdict is contrary to the great weight of the evidence, but we do not agree with the Court of Appeals that the affirmative charge should have been given defendant.

Corrected and affirmed.

GARDNER, C. J., and THOMAS, BOULDIN, LIVINGSTON, and STAKELY, JJ., concur.