27 So.2d 224

**COPELAND v. STATE.**

4 Div. 947.

Court of Appeals of Alabama.

June 25, 1946.

Rehearing Denied Aug. 1, 1946.

E. C. Orme, of Troy, for appellant.

Wm. N. McQueen, Atty. Gen., and Williard W. Livingston, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The record in this case portrays an unfortunate and deplorable accident. It is without dispute that deceased named in the indictment came to his death by having been struck by an automobile driven at the time by this appellant. The propositions of law involved, and which are controlling in this case, have been so often announced, we see no necessity of reiterating or repeating them; and think it amply sufficient

to cite a few of the decisions in support of the conclusion we have,. after a most careful and attentive consideration, arrived at. Willis v. State, 29 Ala.App. 365, 197 So. 62; Lay v. State, 26 Ala.App. 458, 162 So. 319; Rainey v. State, 31 Ala.App. 271, 17 So.2d 683; Rainey v. State, 245 Ala. 458, 17 So.2d 687; Curlette v. State, 25 Ala.App. 179, 142 So. 775. See also Brown v. Yielding, 206 Ala. 504, 90 So. 499.

Under the evidence in this case we do not hold that the defendant was entitled to the affirmative charge, but are free to state that under said evidence the verdict of the jury was contrary to the great weight of the evidence as contended in grounds 1, 2 and 3 of defendant's motion for a new trial, and we hold that reversible error prevailed in the action of the court in overruling and denying said motion.

It appears that the defendant was about sixteen years of age, and the undisputed evidence showed that he was a person of good character and had never before been into any trouble of any sort.

The only witnesses who were present at the time of the accident and saw, and testified what had actually happened, testified to facts and circumstances the tendency of which was to exonerate the defendant, as to the charge contained in the indictment, and from said testimony no blame whatever as to said charge could attach to the acts of the defendant upon that occasion; except the fact that he failed to stop when the accident occurred, as the law requires, thereby committing a misdemeanor for which he has been tried as shown by the record.

These witnesses referred to were three girls or women, who were riding in the car with the defendant at the time. They were not related to the defendant, and so far as appears, were disinterested. Nor was there any attempt in any manner to impeach them, or either of them.

Appellant's earnest and able counsel narrates, in brief, the testimony in behalf of defendant, and in this connection states as follows: "The testimony for the defendant tended to show that he was driving down the road at the place where Mr. Carlisle was killed and that the defendant was a young man about sixteen years of age;

that he was driving on his right hand side of the road about twenty-five to thirty miles an hour when Mr. Carlisle, who was in the middle of the road waving a handkerchief, backed into the car which he was driving causing the accident which resulted in his death."

The foregoing statement by appellant's counsel in brief is borne out by the evidence in the transcript. In support of this statement we quote from the transcript the testimony of witness Effie May McNair, as follows:

"Q. Is your name Effie May McNair? A. Yes, sir.

"Q. Do you know Jimmy George Copeland? A. Yes, sir.

"Q. Do you remember the night that Jimmy George ran over a man down here between here and Henderson? A. Yes, sir.

"Q. Were you in the car with him that night? A. Yes, sir.

"Q. What part of the car were you in? A. I was sitting on the back seat.

"Q. Did you observe where the man was and where the car was when it was first brought to your attention that there was a white man in the road there? A. I didn't hear nothing about it.

"Q. What was the first thing you saw about the man? A. Before we got to him?

"Q. Before you got to him? A. The man was waving a white pocket handkerchief.

"Q. That was a white man? A. Yes, sir.

"Q. Before you saw the man—where was the man in the road? A. He was middle ways of the road.

"Q. What was he doing? A. He was backing across the highway waving a white handkerchief.

"Q. Which way was he backing? A. Backing to the right of the road.

"Q. Which side of the road were you on? A. We were on the right hand side.

"Q. Which direction were you going? A. Going to Henderson.

"Q. Was there any car around you anywhere? A. No, sir. We went around one.

"Q. Was there any car on the side of you when you were going down the road there? A. No, sir.

"Q. And this man was out there waiving a handkerchief? A. Yes, sir.

"Q. And you say he backed over towards the right? What did you all do? How fast were you travelling? A. About 25 or 30 miles.

"Q. What kind of car did you all have? A. I don't know, sir.

"Q. You just had a car—that's all you know? A. Yes, sir.

"Q. A new or an old car? A. It was an old one.

"Q. And when you got down there to the man what happened? I am talking about when you first saw the man. You saw him before he was hit, didn't you? A. Yes, sir.

"Q. When you all were coming up to the place where the man was hit what was he doing? And what were you all doing? A. We was driving on and he was still backing up.

"Q. Was he backing up when you all hit him? A. Yes, sir, and continued backing on into the car."

We note from the transcript that the testimony of Annie Maude Holland was practically the same as the above-quoted testimony. So also was the testimony of witness Jessie Youngblood, except she testified she did not see the man.

The accident happened at about 9 o'clock at night on the paved highway extending between Troy and Henderson, in Pike County, Alabama.

The only evidence of the State as to the identity of the person who drove the car that struck the deceased was that given by the officers who testified that on the next day after the accident the defendant voluntarily admitted he was the person who was driving the car that hit the deceased. These officers testified he also said that the deceased was standing in the road waving a white handkerchief when he hit him.

The other State witnesses testified they never saw the accident, but heard the impact of cars some 250 yards down the road from where they were towards Henderson.

There was no insistence by the State that the defendant intentionally ran his car upon the deceased; nor could there have been, for there was no evidence in the case to sustain such an insistence.

The State, therefore, relied for a conviction upon the theory that the defendant at the time was driving his car in a manner as to evidence a wanton and reckless disregard of human life at the time and place of the homicide.

The undisputed evidence as to the physical facts appear to sustain the defendant's evidence and that of his witnesses. It is undisputed that deceased's handkerchief, hat, one of his shoes, and his body were found lying on the highway, and that deceased's head was near the center of the road. We regard it as reasonably deducible from the evidence that the deceased was at the time trying to hitch-hike a ride and was standing near the center of the road waving his handkerchief when the car struck him.

For the error indicated the judgment of conviction from which this appeal is taken is reversed and the cause remanded. Authorities, supra.

Reversed and remanded.